# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| EIRIKA R.[1], <br>     Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF <br> SOCIAL SECURITY, <br>     Defendant. | Case No. 2:23-cv-02804 <br> Sargus, J. <br> Litkovitz, MJ. <br><br><br> **REPORT AND** <br> **RECOMMENDATION** |

    Plaintiff Eirika R. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc. 13).

**I. Procedural Background**

    Plaintiff protectively filed an application for DIB on April 23, 2021, with an amended alleged onset date of disability beginning October 1, 2018, due to peripheral small fiber neuropathy, depression, and anxiety. (Tr. 464-70, 505-06, 508). Her application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory Beatty. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on May 3, 2022. (Tr. 317-65). On June 20, 2022, the ALJ issued a decision denying plaintiff's applications. (Tr. 217-38).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

This decision became the final decision of the Commissioner when the Appeals Council denied review on June 30, 2023. (Tr. 139-45).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: small fiber neuropathy, depression, anxiety, attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following limitations: (1) occasionally pushing/pulling with the lower and upper extremities; (2) occasionally climbing ramps and stairs, balancing, stooping, and crawling; (3) never climbing ladders, ropes, or scaffolds; (4) frequently handling, fingering, and feeling with both hands; (5) no work around hazards such as unprotected heights or moving mechanical parts; (6) occasional exposure to vibration; (7) performing simple, routine, and repetitive tasks; (8) no work at production rate pace; (9) making simple work-related decisions; (10) occasional interaction with coworkers, supervisors, and the public; and (11) few changes in a routine work setting.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

---

[2] Plaintiff's past relevant work was as a machine egg washer, a light, unskilled job; an automatic car wash attendant, a light, medium as performed, semi-skilled job; and a hospital cleaner, a medium, unskilled job. (Tr. 236-37, 358-59).

7. [Plaintiff] was born [in] … 1988 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 1, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 224-38).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (25,000 jobs nationally), tube operator (4,000 jobs nationally), and sorter (4,000 jobs nationally). (Tr. 237-38, 360).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff argues the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence because he erred in evaluating the medical opinions of state agency reviewing physicians Mehr Siddiqui, M.D., and W. Scott Bolz, M.D.  (Doc. 10 at PAGEID 988-93).   Plaintiff contends the ALJ erred by not adopting their assessments that plaintiff was limited in her ability to handle, finger, and feel in both hands and, more specifically, Dr. Bolz's assessment limiting these work activities to "occasional."  (*Id.*).

In response, the Commissioner maintains the ALJ carefully reviewed the record, ultimately assessing a reasonable and comprehensive residual functional capacity finding for a restricted range of sedentary work with other nonexertional limitations, including "frequent" handling, fingering, and feeling. (Doc. 12 at PAGEID 1001-05).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  A claimant's RFC assessment must be based on all the relevant evidence in her case file. (*Id.*).  The governing regulations describe five different

5

categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. § 404.1520c(a).

The ALJ is charged with the final responsibility in determining a claimant's RFC, *see* 20 C.F.R. § 404.1546(c), and for assessing a claimant's RFC based on all the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The ALJ's decision "'cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Id.* (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

1. **State agency medical consultants' opinions**[4]

State agency medical consultant Mehr Siddiqui, M.D., reviewed plaintiff's medical file in July 2021 on initial agency review. Regarding plaintiff's residual functional capacity, Dr. Siddiqui opined plaintiff would be able to stand, sit and/or walk for a total of about six to eight hours in an eight-hour workday with normal breaks. (Tr. 372). Dr. Siddiqui opined that plaintiff was limited to occasional pushing and/or pulling with her lower and upper extremities. She

---

[4] Because plaintiff's specific error focuses on whether the ALJ erred by finding plaintiff could engage in frequent manipulative limitations, rather than adopting the agency expert's finding of occasional manipulative limitations, the Court's scope of review is restricted to this narrow issue.

opined plaintiff should avoid all exposure to hazardous material, concentrated exposure to vibration, and heavy machinery. (Tr. 373). Dr. Siddiqui also opined that plaintiff was "limited" in her ability to handle, finger, and feel, without specifying the degree of limitation. (*Id.*)

State agency medical consultant W. Scott Bolz, M.D., reviewed plaintiff's file on reconsideration in December 2021. (Tr. 377-385). The record included the following remark from plaintiff:

> My Neuropathy has conflicted my life. I can't hold objects without dropping them. My finger tips go numb and tingle a lot. I'm unable to where [sic] tennis shoes or boots. it makes my feet burn, needle pricks feelings on the bottom of my feet and feel more numb. My balance is a concern because i trip and stumble over my own feet a lot due to my feet staying numb all day everyday. I also can not stand no more than 20 minutes at a time. No treatments have been successful at this time. I am still going to do a MRI for the surgeon to get a Stimulator for my spine to help with my nerve damage.[5]

(Tr. 378). Dr. Bolz affirmed Dr. Siddiqui's assessment finding "[t]he prior administrative medical findings from the initial level have been reviewed and are found to be consistent with and supported by the totality of evidence available in file, including the updated evidence received at the reconsideration level." (Tr. 382). Dr. Bolz, however, opined that plaintiff was limited to only "occasional" handling, fingering, and feeling. (*Id.*).

**2. The ALJ's evaluation of Dr. Bolz's opinion on plaintiff's manipulative limitations is not supported by substantial evidence.**

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to

---

[5] The Court did not edit the capitalization and punctuation in this note.

such opinions.[6] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[7] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[8] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2)

---

[6] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[8] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

(emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

The ALJ found the opinions of Dr. Siddiqui and Dr. Bolz to be "somewhat persuasive as the general idea behind their collective limitations is to account for any paresthesia of the hands and feet that could result in pain and/or loss of feeling." (Tr. 233-34). As to their opinions regarding plaintiff's level of manipulative limitations, the ALJ stated:

> Carpal tunnel symptoms improved with [the CTS release] surgery (Exhibit 1F at 7) [Tr. 565] so that the claimant appears to have good fine motor control (Exhibit 6F at 6) [Tr. 844]. Thus, restricting her use of the hands to handle, finger, and feel on a *frequent* basis fully accommodates any allegations of "challenging" motor function (Exhibit 5F at 8) [Tr. 829].

(Tr. 234) (emphasis added).

The ALJ cited three records in support of his decision to limit plaintiff to "frequent" use of the hands to handle, finger, and feel while rejecting the "occasional" limitation opined by Dr. Bolz. The first record is from The Ohio State University Medical Center dated February 3, 2021, which states plaintiff "has carpal tunnel syndrome bilaterally status post CTS release with improvement in symptoms." (Tr. 565). The second record relied on by the ALJ is from a consultative psychological evaluation, dated September 28, 2021, noting plaintiff's "fine motor control was good as she held her pen in a firm pincer grasp." (Tr. 844).[9] The third record is an

---

[9] This single sentence was taken from the 10-page report of a September 28, 2021 psychological clinical evaluation performed by Don McIntire, Ph.D. (Tr. 840). Dr. McIntire was charged with providing a diagnostic conclusion

9

August 4 , 2021 progress note from The Ohio State University Medical Center stating, "The CTS surgery helped with the hand pain but her motor function is still challenging." (Tr. 829).

Notably, each of these records, including plaintiff's previous CTS release surgery, was included in Dr. Bolz's review of the medical record when he formed his RFC opinion on plaintiff's manipulative abilities. (Tr. 367-68, 377-78); (Tr. 382) ("Claimant with small fiber peripheral neuropathy and carpal tunnel syndrome BIL s/p [status post] CTS release."). Based on his review of the medical evidence of record, Dr. Bolz opined that plaintiff was limited to only "occasional" use of the hands to handle, finger, and feel. The ALJ, on the other hand—based on the three pieces of evidence he cited which Dr. Bolz also reviewed—determined plaintiff was able to "frequently" use her hands to handle, finger, and feel. While the ALJ is not required to defer to or incorporate every limitation from a state agency consultant's opinion in formulating an RFC, the ALJ "must explain why the opinion was not adopted." *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024) (unpublished) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); Social Security Ruling 96-8p). The ALJ's decision must say enough "to allow the [] court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995)). Here, the ALJ's decision lacks any explanation why plaintiff was less limited than Dr. Bolz opined based on his review of the exact same evidence. Dr. Bolz was the only medical professional to opine on the degree to which plaintiff was limited in her ability to handle, finger, and feel. The ALJ's contrary opinion on the limiting effects of plaintiff's impairments on her manipulative abilities amounts to "an impermissible interpretation of raw

---

using DSM-5 nomenclature and a functional assessment of plaintiff's work abilities and limitations from a mental standpoint. (*Id.*). Dr. McIntire was not asked to assess plaintiff's functional capacity based on bilateral carpal tunnel syndrome, numbness and tingling in both hands, foot pain bilaterally, and idiopathic small fiber sensory neuropathy.

medical data" on the part of the ALJ. *Tate v. Comm'r of Soc. Sec.*, No. 3:17-cv-371, 2018 WL 4501069, at *4 (S.D. Ohio Sept. 20, 2018), *report and recommendation adopted*, 2018 WL 4954111 (S.D. Ohio Oct. 12, 2018) (citing *Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms")). In light of the foregoing, the undersigned finds reversible error in the ALJ's analysis of Dr. Bolz's medical opinion.

And to be sure, there is a difference between occasional and frequent handling, fingering, and feeling in crafting an RFC and determining what jobs plaintiff may be able to perform in the national economy. The terms "occasional" and "frequent" are terms of art in social security law. *Toohey v. Comm'r of Soc. Sec.*, No. 2:20-cv-02555, 2021 WL 940288, at *9 (S.D. Ohio Mar. 12, 2021), *report and recommendation adopted*, 2021 WL 1383351 (S.D. Ohio Apr. 13, 2021). "'Occasional' means occurring from very little to up to 1/3 of the time. Social Security Ruling 83-10, 1983 WL 31251. 'Frequent,' however, means occurring from 1/3 to 2/3 of the time. *Id.*" *Toohey*, 2021 WL 940288 at *9. Here, the ALJ determined plaintiff could engage in work requiring handling, fingering, and feeling up to almost twice as often as the state agency expert found she could. Without any explanation by the ALJ for discounting the agency expert's opinion regarding this limitation, the Court is unable to meaningfully review the ALJ's decision. The Court cannot conclude the ALJ's decision to limit plaintiff to frequent, rather than occasional, handling, fingering, and feeling is supported by substantial evidence.

In addition, to the extent the ALJ relied on the notation that plaintiff experienced improvement after her carpal tunnel release surgery, this evidence does not provide substantial support for the ALJ's conclusion that plaintiff could perform "frequent" manipulative activities

11

with her hands. "Improvement" is a relative concepts and requires context for relevancy. *See McQueen v. Comm'r of Soc. Sec.*, No. 1:13-cv-88, 2014 WL 533496, at *9 (S.D. Ohio Feb. 11, 2014), *report and recommendation adopted*, 2014 WL 879880 (S.D. Ohio Mar. 5, 2014) (citing *Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 494 (6th Cir. 2011)) ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved."). The ALJ does not cite, and the Court is unable to find, references in the medical evidence regarding the level of improvement plaintiff actually experienced after the carpel tunnel release surgery. In fact, the records the ALJ cites indicate that plaintiff's symptoms persisted despite surgery. The February 3, 2021 Ohio State neuromuscular disorders clinic record notes:

> She continues to have significant neuropathic pain from her small fiber neuropathy. Thankfully the mexiletine that was started on her in the interim between her last visit and now seems to be providing some benefit. I offered to increase the dose from 150-200 mg b.i.d. today and she decided to go ahead and do that. She is going to also continue with her plans to pursue spinal cord stimulator due to the fact that she has had inadequate benefit from medications for neuropathic pain.

(Tr. 568). The August 2021 Ohio State progress note referencing plaintiff's "challenging" motor functioning also state that plaintiff "[r]andomly will get electrical shock in her hands. Dropping items when trying hold them or carry." (Tr. 829). Plaintiff similarly reported to medical personnel that she frequently drops things (Tr. 182, 843, 906), and she testified she has sensory loss in her hands, has to grip things harder to hold them, and "drops everything [she] touches." (Tr. 223, 345). Thus, while there is one record stating that plaintiff's carpal tunnel symptoms "improved" after surgery, the ALJ fails to cite evidence showing the degree to which plaintiff's manipulative abilities increased such that she could perform frequent hand manipulations. The notation that plaintiff "improved" following her carpal tunnel surgery does not, by itself, substantially support the ALJ's conclusion.

12

In sum, the Court is unable to discern the ALJ's evidentiary basis for rejecting Dr. Bolz's opinion that plaintiff was limited to only occasional use of her hands for handling, fingering, and feeling. The ALJ failed to explain why Dr. Bolz's opinion in this regard was not adopted, especially where the ALJ and Dr. Bolz relied on the same evidence. The ALJ's decision is not supported by substantial evidence and should be reversed.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Therefore, it is recommended that this matter be reversed and remanded for further proceedings consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. 10) be **SUSTAINED**;

2. The Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this decision.

Date: 6/7/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

EIRIKA R.,                                        Case No. 2:23-cv-02804
    Plaintiff,                              Sargus, J.
                                                    Litkovitz, MJ.
   vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).